**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| TRENA MOSER, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 2:24-cv-2231 |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| | ) | |
| BOARD OF COUNTY COMMISSIONERS | ) | |
| OF SEWARD COUNTY, KANSAS | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

COMES NOW, Plaintiff Trena Moser ("Moser" or "Plaintiff") and for her Complaint against Defendant Board of County Commissioners of Seward County, Kansas (the "County" or "Defendant"), states and alleges as follows:

### I.      NATURE OF THE ACTION

1. This is an action for a violation of Plaintiff's constitutional and common law rights brought to secure legal and equitable relief for injuries sustained by Plaintiff because of Defendant's retaliation against Plaintiff in violation of her First and Fourteenth Amendment rights as well as Kansas common law.

2. Defendant, by and through its employees, officers, and agents, unlawfully retaliated against Plaintiff in connection with reports made by Plaintiff regarding unethical and illegal activities by her coworkers. In retaliating against Plaintiff, Defendant violated Plaintiff's First Amendment right to free speech and her Fourteenth Amendment right to due process of law and as such, Plaintiff is entitled to relief under 42 U.S.C. § 1983.

3. Plaintiff seeks compensatory damages, punitive damages, liquidated damages, and reasonable attorneys' fees and costs as remedies for Defendant's violation of her rights.

## II. PARTIES

4. Plaintiff Trena Moser is a citizen of Guyman, Oklahoma.

5. Defendant Seward County Board of County Commissioners, comprised of five members, is the chief governing and policy making body of or for Seward County, Kansas. The County is a governmental entity organized and created pursuant to and under the laws of the State of Kansas and was and is established to carry out State prescribed functions at the local level. There are numerous departments organized under the authority of the County. The Seward County Landfill is one of those departments that operates under the direction of the County.

6. Defendant is a function of the government of the State of Kansas and can act only through its officers and employees, and the conduct of an officer or employee acting within the scope of his or her employment or authority is the conduct of the County.

7. Plaintiff timely and properly submitted notice of her claim to the Clerk of the Seward County Board of County Commissioners on April 10, 2023. Receipt of this letter was acknowledged by the County. It has been at least 120 days since delivery of this demand letter. Pursuant to K.S.A. § 12-105b and the Kansas Tort Claims Act, Plaintiff has satisfied any and all statutory claim notice requirements with respect to her state law tort claim herein prior to filing of this suit.

## III. JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over Plaintiff's federal claims – Counts I and II - pursuant to 28 U.S.C. § 1331.

9. The Court has jurisdiction over the Kansas law claims herein pursuant to 28 U.S.C. § 1367.

10. This Court further has subject matter jurisdiction under Plaintiff's claims due to the

parties being completely diverse in that they reside or are organized in two different states and the amount in controversy being over $75,000.00 pursuant to 28 U.S.C. § 1332.

11.     Venue is proper in this Court under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3) since Defendant is subject to this Court's personal jurisdiction due to its existence as a governmental body under the jurisdiction of this District, and the events and unlawful employment practices giving rise to this action occurred in this District.

### IV.     ALLEGATIONS COMMON TO ALL COUNTS

12.     Moser was an employee of the Seward County Landfill from September 1, 2011 until December 7, 2022.

13.     Moser held the position of Dispatcher and Administrative clerk.

14.     Moser's job responsibilities included creating and assigning work orders to drivers, answering phones, taking payments from customers, and billing and clearing out work orders.

15.     Moser was not tasked with any oversight of the Landfill's accounting practices, the Landfill's spending practices, nor was she tasked with overseeing the Landfill's budget.

16.     For ten out of the eleven years that Moser was employed by the Landfill, Moser had very good attendance, received high customer service reviews, had no significant disciplinary issues, and was generally considered a good employee.

17.     Moser's supervisor in December of 2022 was Terry Dees who was in turn supervised by Brock Theiner.

18.     In or around 2013, Moser became aware of embezzlement or theft of county funds by her coworker, Tara Grant.

19.     Moser became aware of Ms. Grant's conduct when she noticed certain suspicious accounting activity when reviewing the Landfill's records.

20. Moser reported this strange conduct to her supervisors several times over the course of the next several times.

21. These supervisors did not act on Moser's reports and instead, encouraged her to forget about it and move on.

22. When Moser attempted to report her concerns, Moser was reminded by her supervisors that investigations would be costly and would take time to conduct.

23. Moser was concerned that management did not take her reports seriously, but did not escalate the situation because, at this point, Moser could not prove beyond a shadow of a doubt that her suspicions were true.

24. Moser continued in her job while simultaneously keeping an eye out for further suspicious activity from Ms. Grant.

25. Moser was able to perform all essential functions of her job while also monitoring the Landfill's records for suspicious activity for eight years without any issues regarding her performance raised by her supervisors or customers.

26. In or around March, 2022 Moser obtained the evidence she needed to prove that her suspicions regarding Ms. Grant's embezzlement could be proven.

27. Moser made this discovery after a customer called the land fill office to inquire about a payment that he had made by cash.

28. The customer had recently received notice that his payment was not received, despite the customer dropping off the payment himself.

29. Grant was the employee responsible for receiving and recording these payments.

30. Moser confronted Grant about this discrepancy soon after receiving this complaint from the customer.

31. Grant acknowledged this discrepancy and indicated that she would address the problem.

32. Sometime after, Moser checked the record books again and discovered that the customer's payment was marked as received via credit card.

33. Moser investigated further and discovered that the card on file for this customer's payment belonged to Grant.

34. Moser believed that this constituted evidence that Grant had pocketed the customer's cash payment and then used her credit card to pay the customer's invoice to cover her tracks.

35. Moser brought this evidence to April Warden, the Seward County Administrator in March of 2022.

36. Warden commenced an investigation that was meant to look into Moser's claims, but no meaningful action was taken as a result of this investigation while Moser worked for Seward County.

37. Instead, Moser began receiving negative feedback from her supervisors and lost privileges that she had grown accustomed to over the course of her eleven year career with Seward County.

38. After Moser made this report, Grant began to harass and bully Moser. Grant also recruited her trainee, Holly Achuleta, to join in this harassment.

39. Moser reported this retaliation from Grant to her supervisors in or around April of 2022.

40. On July 1, 2022, Moser received a "third and final write-up" in connection with Moser's reports of Grant's suspected embezzlement.

41. This write-up characterized Moser's complaints as "gossip" and bemoaned the expense and time that Moser's allegations cost the County. The write up also chastised Moser for allegedly continuing her investigation after repeatedly being told to stop.

42. Moser was surprised by this write up because she had not received any disciplinary actions prior to receiving said write up. Additionally, Moser had not been discussing her suspicions regarding Grant's embezzlement with anybody employed by Seward County outside of her immediate superiors and investigators.

43. Moser's working conditions continued to deteriorate throughout the months following this write up in that her supervisors subjected her to unfair criticism and continued to deny her privileges she once enjoyed and that she was continually subjected to harassment and bullying by her coworkers without her supervisor's intervention.

44. This pattern continued until Moser was terminated on December 7, 2022.

45. On information and belief, sometime after Moser was terminated, Grant was also terminated by Seward County.

46. On information and belief, Grant was terminated in connection with suspicions of embezzlement.

### V. LEGAL CLAIMS

### <u>COUNT I</u>

**42 U.S.C. § 1983 – Retaliation for Exercise of First Amendment Rights**

47. Plaintiff incorporates by reference Paragraphs 1 through 44 above as though fully set forth herein.

48. The First Amendment to the U.S. Constitution provides for right of an individual to have freedom of speech.

49.     There is a substantial public interest in preventing public employers from embezzling government funds.

50.     By making reports of her co-worker's suspected embezzlement, Plaintiff was engaging in speech that is protected by the First Amendment.

51.     In making reports of her co-workers suspected embezzlement, Moser was going above and beyond the scope of her official duties.

52.     By issuing write-ups to Plaintiff, allowing Plaintiff to be bullied in her workplace, and terminating Plaintiff, Defendant was punishing Plaintiff for engaging in activities protected by the First Amendment and thereby attempting to deprive of her of this right.

53.     Plaintiff's interest in her right to free speech and the public's interest in preventing waste or misappropriation of government funds outweighed any potential interest that motivated Defendant's employment actions that harmed Plaintiff.

54.     Each Defendant's employment actions that harmed Plaintiff were done under the color of state law.

55.     Plaintiff's protected speech was a motivating factor in Defendant's decision to retaliate and terminate her.

56.     Defendant would not have retaliated and terminated Plaintiff if she had not engaged in protected speech.

57.     Defendant's decisions to retaliate against and terminate Plaintiff resulted in damages to Plaintiff.

WHERFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant for such damages, actual and punitive, as are fair and reasonable, including back pay and front pay and compensatory damages, for her reasonable attorneys' fees and costs incurred

herein, for interest allowed by law, such that the total of any award of damages would exceed $75,000.00, and for such other and further relief as the Court may deem just and equitable.

## COUNT II

### Wrongful Termination in Violation of Kansas Public Policy

58. Plaintiff restates and re-alleges the above paragraphs as if fully set forth in this cause of action.

59. Under the whistleblower public policy exception to the at-will employment doctrine, termination of an employee, in retaliation for good faith reporting of a co-worker's or employer's serious infraction of rules, regulations, or law pertaining to public health, safety, and general welfare, is an actionable tort.

60. Plaintiff made repeated good faith reports of acts, conduct, and practices engaged in by her coworker, which she reasonably and in good faith believed were unlawful, unsafe, and improper and involved conduct pertaining to a matter of public concern.

61. Specifically, Plaintiff made numerous reports to both her direct supervisors and county supervisors regarding her coworker's embezzlement.

62. Plaintiff made these reports out of a concern regarding the misappropriation of funds that she was observing at the Seward County Landfill.

63. Defendant had knowledge of Plaintiff's reporting prior to terminating her.

64. After making these reports and engaging in this protected activity, Plaintiff was unlawfully discriminated and retaliated against by Defendant when its employees subjected her to a hostile work environment and Defendant eventually terminated her.

65. Defendant's treatment and termination of Plaintiff was outrageous and carried out willfully, wantonly, and maliciously.

66. As a direct and proximate result of the unlawful acts and conduct of Defendant, as

described in part herein, by and through and in concert with its employees and agents, Plaintiff has suffered pecuniary and non-pecuniary damages, including lost wages and benefits, out of pocket expenses, interest, mental and emotional distress, and reasonable attorneys' fees in an amount subject to proof at trial.

WHERFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant for such damages in excess of $75,000 including actual and punitive, as are fair and reasonable, including back pay and front pay and compensatory damages, for her reasonable attorneys' fees and costs incurred herein, for interest allowed by law, and for such other and further relief as the Court may deem just and equitable.

## COUNT III

### Violation of Plaintiff's Fourteenth Amendment Right to Procedural Due Process

67. Plaintiff restates and re-alleges the above paragraphs as if fully set forth in this cause of action.

68. The Due Process Clause of the Fourteenth Amendment prohibits state governments from depriving any person of life, liberty, or property, without due process of law.

69. Plaintiff had a property interest in her paid time off ("PTO") that she had accumulated over her eleven-year career with Defendant.

70. The Due Process Clause of the Fourteenth Amendment gives a public employee a legal right to a hearing before they can be deprived of a property interest.

71. Plaintiff was hired by Defendant in 2011 and accumulated hundreds of hours of PTO during the time she worked for Seward County. Plaintiff spent little to no PTO during her career.

72. Defendant's policies and procedures regarding PTO state as follows:

"Seward County will allow an employee in Good Standing who voluntarily terminates his or her employment with Seward County with proper notice of separation; or who is separated from employment by a layoff to:

Receive 10 days (80 hours) of accumulated PTO at current rate of pay to be included on the employee's final paycheck. . .

Employees who retired from Seward County under the plans offered by Seward County are eligible for a PTO buy out up to 512 hours. . ."

73. Plaintiff received no compensation associated with her PTO when she was terminated by Defendant.

74. Defendant deprived Plaintiff of her PTO without due process of law in that it circumvented its own progressive discipline policy to terminate Plaintiff in such a way that would allow them to justify refusing to pay out PTO that Plaintiff had otherwise earned.

75. Plaintiff was not provided a hearing to determine if the reason for her termination was justified.

76. Plaintiff was not allowed the opportunity to appeal the reason for her termination.

77. As described herein, the University procedures set no guidelines, criteria, or process for faculty elimination; thus, the University's finding that its substandard procedures were followed is self-serving, rings hollow, and provides no actual protection of Plaintiff's due process interests.

78. The particularities of the situation demanded that Plaintiff receive more due process and be afforded an actual opportunity to challenge her termination.

79. Plaintiff was entitled to an explanation of Defendant's evidence regarding their decision to terminate her but was deprived of this explanation because Defendant's procedures did not require disclosure of the reasons for termination.

80. Because Plaintiff was never informed of the reason for her termination, Defendant violated due process by not showing sufficient cause for her termination and therefore refusing to pay out the PTO she was entitled to without justification.

81. As a direct, legal, and proximate result of this deprivation of procedural due process, Plaintiff has sustained, and will continue to sustain, economic and emotional damages in an amount to be proven at trial.

## COUNT IV

**Violation of Plaintiff's Fourteenth Amendment Right to Substantive Due Process**

82. Plaintiff restates and re-alleges the above paragraphs as if fully set forth in this cause of action.

83. The Due Process Clause of the Fourteenth Amendment prohibits state governments from depriving any person of life, liberty, or property, without due process of law.

84. Plaintiff had a property interest in the PTO that she had accumulated insofar as Defendant's policies and procedures required this PTO to be paid out upon the end of employment if certain conditions were met.

85. Defendant decided to withhold the PTO payment that Plaintiff was entitled to for arbitrary and capricious reasons in that she was wrongfully terminated and in that the decision to terminate her was made contrary to Defendant's progressive discipline policy.

86. In fact, the reasons for Plaintiff's termination were so arbitrary and capricious, that the Defendant refused to disclose the reason for her termination.

87. In her termination paperwork, Plaintiff was simply reminded that she was an "at-will employee, which means that Seward County may terminate [her] employment without notice, with or without cause.".

88. Defendant was not provided an opportunity to rebut the reason for her termination in such a way that might have entitled her to receive the PTO that she had earned.

89. In fact, Defendant's refusal to disclose the reasons for Plaintiff's termination prevented Plaintiff from being able to meaningfully respond, making the entire process inherently arbitrary and capricious.

90. Because Plaintiff was never informed of the reason for her termination, Defendant violated due process by not showing sufficient cause for her termination.

91. As a direct, legal, and proximate result of this deprivation of substantive due process, Plaintiff's employment was terminated, and her tenure was revoked. Plaintiff has sustained, and will continue to sustain, economic and emotional damages in an amount to be proven at trial.

WHEREFORE, Plaintiff requests that the Court enter judgment in her favor and against Defendant for economic damages, including but not limited to: back pay, lost benefits, front pay, injunctive relief, compensatory damages, punitive damages, liquidated damages, for reasonable attorneys' fees and costs incurred herein, for pre- and post-judgment interest as allowed by law, and for such other and further legal and equitable relief as this Court deems just and proper.

## VI. PLAINTIFF'S DEMAND FOR A JURY TRIAL

Plaintiff hereby requests and demands a trial by jury on all issues so triable.

## VII. DESIGNATED PLACE OF TRIAL

Plaintiff hereby designates Kansas City, Kansas as the place of trial in this matter.

Dated: May 31, 2024

Respectfully submitted,

By: */s/ Austin O. Jaspers*
Austin O. Jaspers, MO #72642
JASPERS LAW LLC
1900 West 75th Street, Suite 220
Prairie Village, Kansas 66208
Telephone: (913) 359-8448
Facsimile: (913) 490-1047
austin@jasperslaw.com

ATTORNEY FOR PLAINTIFF